IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYTTO PTE. LTD. (d/b/a "Lovense"), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE PARTNERSHIPS and UNINCORPORATED ) <br> ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," ) <br> ) <br> Defendants. ) <br> ) | Case No. _____ <br><br> Jury Trial Demanded |

## COMPLAINT

Plaintiff Hytto Pte. Ltd., doing business as "Lovense" ("Plaintiff" or "Lovense"), by and through its undersigned counsel, hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action under the provisions of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. § 1331 because they arise under federal law.

2. Venue is proper in this Court under 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores and URLs operating under the seller aliases

1

identified in Schedule A attached hereto (the "Seller Aliases").[1] Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademark (the "Unauthorized Lush Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. All of these activities and of such activities of the Defendants are within the United States as a whole, as well. *See* 735 ILCS §5/2-209; Fed. R. Civ. P. 4(k)(1) & 4(k)(2).

3. Venue is also proper under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this district under Illinois law and, therefore, "reside" in the Northern District of Illinois according to federal law.

## INTRODUCTION

4. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Unauthorized Lush Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Lush Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more

---

[1] The Seller Aliases are listed on Schedule A, attached as **Exhibit 1** hereto. The version attached to this complaint is redacted. Plaintiff is moving contemporaneous with this Complaint for leave to file Schedule A under seal to avoid the Defendants learning of this case and consequently working to avoid service of the summons and complaint. The unredacted version of Schedule A will be filed contemporaneously under seal.

Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation.

5. E-commerce platforms used by Defendants fail to adequately subject new sellers to verification and confirmation of their identities, allowing Defendants to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of counterfeit products on their platforms.

6. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademark, as well as to protect unknowing consumers from purchasing Unauthorized Lush Products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

## THE PARTIES

**Plaintiff**

7. Plaintiff Hytto Pte. Ltd. is a Singaporean private limited company with its registered address at 152 Beach Road, #11-05 Gateway East, Singapore 189721.

8. Plaintiff is an award-winning designer and manufacturer of remote-controllable sex toys, including Lush series of vibrators (the "Lush Products"). Such control can be enacted through a mobile phone or smartwatch application in either proximity to or remote from the sex toy, such that the user, a significant other far from the user, or the audience of an erotic webcam performer can control the toy.







9. Lovense has been recognized by prominent general media outlets such as Forbes, Newsweek, The New York Post, GQ, Vogue, CNET, INSIDER, TechCrunch, and Yahoo. It has also been recognized by media outlets in its industry, including by winning numerous awards:



10. Lovense's innovative technology allows greater control of sex toys responsive to various stimuli. For example, that technology allows close-range control via Bluetooth, long-

distance control via Wi-Fi to Bluetooth, synchronizing the movement of the toy to music or making it responsive to various sounds, and tailoring vibration and other movement patterns to user preferences.



11. As a result, Lovense's sales have grown rapidly through numerous channels, including general online retailers such as Amazon.com, specialty adult-oriented online retailers, and brick-and-mortar stores, both throughout the United States and specifically in Illinois. Thus, it is now a top brand within its industry. *See, e.g.*, "These Are the Best Sex Toy Brands on the Market," GQ, *available at* https://www.gq.com/story/best-sex-toy-brands.



6

12. Among all the Lovense products, the Lush Products are the best seller, with an annual sale of over ten million dollars in the United States for each of the past four years. Tens of thousands of the Lush Products have been sold to Illinois, including this district, since 2017.

13. The Lush Products include the original "Lush" and its upgraded versions, the "Lush 2" and the "Lush 3," as well as the related app, the Lovense Remote, that allows users to control the Lush Products from their smart phones, as well as connect with other users over the internet. Over the years, Lovense has worked on perfecting the Lush Products from the original design philosophy, which has made the product series very successful.

14. The popularity of these products is further supported by the over one million downloads of the Lovense Remote on Google Play alone, as well as over 100 million search results on Google.com for Lovense's Lush Products.

15. To protect its market position and reputation for innovative products made under arduous quality standards, Lovense holds numerous intellectual property rights. These include various trademarks, design patents, and copyrights.

16. Before Defendants' acts described herein, Plaintiff and its predecessor-in-interest released the Lush Products under various trademarks registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,722,591 | LOVENSE | For: Adult sexual stimulation aids, namely, artificial penises, artificial vaginas; Adult sexual stimulation kit comprised primarily of adult sexual stimulation aids and a workbook in class 010. |
| 6,903,638 | Lush | For: Adult sexual stimulation aids, namely, vibrators and wearable vaginal vibrators; Sex toys, namely, vibrators and wearable vaginal vibrators in class 010. |

17. Plaintiff has used these trademarks (collectively, the "Lovense Trademarks") for many years and has continuously sold products under the Lovense Trademarks. As a result of this long-standing use, strong common-law trademark rights have amassed in those trademarks. Plaintiff's use of the marks has also built substantial goodwill in and to the trademarks. The Lovense Trademarks are famous marks and valuable assets of Plaintiff. The Lovense products, including the Lush Products, typically include at least one of the registered Lovense Trademarks.

18. The above U.S. registrations for the Lovense Trademarks are valid, subsisting, and in full force and effect. The registrations for the Lovense Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the Lovense Trademarks under 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed Lovense Trademarks and their respective assignment records are attached hereto as **Exhibits 2 and 3**.

19. The Lovense Trademarks have been continuously used and never abandoned. The innovative marketing and product designs of the Lovense products have enabled the Lovense brand to achieve widespread recognition and fame and have made the Lovense Trademarks some of the most well-known marks in the sex-toy and related industries. The widespread fame, outstanding reputation, and significant goodwill associated with the Lovense brand have made the Lovense Trademarks valuable assets of Plaintiff.

20. The Lush trademark (the "Lush Mark") is distinctive when applied to the Lush Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the Lush Mark are manufactured to the highest quality standards.

21. Lovense has spent more than $10 million dollars developing the Lovense brand since August 12, 2013 (its date of first commercial use in the U.S.), and Lovense has advertised, promoted, and defended the Lush Mark in the U.S. since at least August 21, 2015. As a consequence, American consumers, including within this District, have come to easily associate the LUSH Mark with the Lush Products.

22. The Lush Products have become among the most popular of their kind in the U.S. and the world. The Lush Mark have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the mark. As such, the goodwill associated with the Lush Mark is of incalculable and inestimable value to Plaintiff.

23. Genuine Lush Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Lovense brand.

**The Defendants**

24. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued under Federal Rule of Civil Procedure 17(b).

25. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking

9

of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

26. The success of the Lovense brand has resulted in significant counterfeiting of the Lush Mark. Consequently, Plaintiff has a worldwide brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering counterfeit Lush Products on online marketplace platforms such as Amazon, AliExpress, Alibaba, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this judicial district and throughout the United States. According to U.S. Customs and Border Protection, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 4**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights ("IPR") violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

27. Third-party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce

10

platforms." **Exhibit 5**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods," prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 6**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. **Exhibit 6** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 6** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 5** at 186–87.

28. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold the Unauthorized Lush Products to residents of Illinois.

29. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards,

Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use the Lush Mark, and none of the Defendants are authorized retailers of genuine Lush Products.

30. Many Defendants also deceive unknowing consumers by using the Lush Mark without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the internet looking for websites relevant to consumer searches for the Lush Products. Other e-commerce stores operating under Seller Aliases omit using the Lush Mark in the item title to evade enforcement efforts while using strategic brand names and descriptions that will trigger their listings when consumers are searching for the Lush Products.

31. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

32. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Lush Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

33. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

12

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Lush Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Lush Products were manufactured by and come from a common source and that Defendants are interrelated.

34. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

35. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Lush Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Lush Mark in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Lush Products into the United States and Illinois over the internet.

36. Defendants have intentionally used the Lush Mark and sold Unauthorized Lush Products with the bad intent of trading on the goodwill and reputation of Plaintiff to benefit themselves, all to the detriment of Plaintiff and its customers.

37. Defendants' unauthorized use of the Lush Mark in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Lush Products, including the sale of Unauthorized Lush Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT 1

### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit reproductions of the federally registered Lush Mark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Lush Mark is a highly distinctive mark. Consumers have come to expect the highest quality from the Lush Products offered, sold or marketed under the Lush Mark.

40. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Lush Mark without Plaintiff's permission.

41. Plaintiff's United States Registrations for the Lush Mark (**Exhibit 3**) is in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Lush Mark and are willfully and intentionally using infringing and counterfeit versions of the

Lush Mark in the manner described in **Schedule A (<u>Exhibit 1</u>)**. Defendants' willful, intentional and unauthorized use of the Lush Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Lush Products among the general public.

42. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Lush Mark.

44. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Lush Products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

45. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Lush Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Lush Products by Plaintiff.

47. By using the Lush Trademark in connection with the sale of Unauthorized Lush Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Lush Products.

48. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Lush Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

49. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of the Lovense brand.

## **PRAYER FOR RELIEF**

Plaintiff respectfully asks the Court to grant the following relief:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Lush Trademark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, manufacturing, importing, holding for sale, offering for sale, or sale of any product that is not a genuine Lush Product or is not authorized by Plaintiff to be sold in connection with the Lush Trademark;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Lush Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Lush Trademark;

   c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Lush Products are those sold under the authorization, control or

supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Lush Mark and damaging Plaintiff's goodwill;

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Lush Mark or colorable imitations thereof; and

f. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (e).

B. Entry of an Order that, upon Plaintiff' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, AliExpress, Alibaba, DHgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, in connection with the sale of counterfeit and infringing goods using the Lush Mark;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Lush Mark; and

    c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

C. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Lush Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

D. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Lush Mark;

E. That Defendants account for and pay to Plaintiff's costs and expenses, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and prejudgment interest at the maximum legal rate; and

F. Any and all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

Dated: October 26, 2023          */s/ Stephen J. Rosenfeld*

                                               Stephen J. Rosenfeld
                                               Nicholas A. Kurk
                                               Jacob D. Radecki
                                               MCDONALD HOPKINS LLC
                                               300 North LaSalle, Suite 1400
                                               Chicago, IL 60654
                                               Phone: (312) 280-0111
                                               srosenfeld@mcdonaldhopkins.com
                                               nkurk@mcdonaldhopkins.com
                                               jradecki@mcdonaldhopkins.com

Kris Y. Teng (*pro hac vice* forthcoming)
Zhe "Philip" Wang (*pro hac vice* forthcoming)
Gang "Gavin" Ye (*pro hac vice* forthcoming)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone: (703) 995-9887
Fax:    (703) 821-8128
kris.teng@bayes.law
philip.wang@bayes.law
gavin.ye@bayes.law

*ATTORNEYS FOR PLAINTIFF*
*HYTTO PTE. LTD. (D/B/A "LOVENSE")*